UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GENE CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV1454 HEA |
| ) | |
| SHERRY BUHLER, et al., ) | |
| ) | |
| Defendants. ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's[1] Motion for Summary Judgment, [Doc. No 49]. Plaintiff has not responded to the Motion. For the reasons set forth below the Motion is granted.

## Facts and Background

Plaintiff is civilly committed to the Missouri Sexual Offender Treatment Center (MSOTC). He brought this action under the provisions of 42 U.S.C. § 1983. In his Amended Complaint, Plaintiff claims that his Eighth and Fourteenth Amendment rights were violated and that Defendants were grossly negligent. Plaintiff claims that he was placed in protective isolation without his shoes,

---

[1] Plaintiff originally brought this action against Sherry Buhler, Security Aide at Missouri Sexual Offender Treatment Center (MSOTC), Rachel Warncke, Security Aide at MSOTC and Steve Hollinger, Security Aide at MSOTC, in addition to Larry Majors, Security Aide at MSOTC, and Alan Blake, Chief Operating Officer at MSOTC. On September 11, 2006, the Court granted plaintiff's Motion for Order to Dismiss Defendants Buhler, Warncke and Hollinger.

eyeglasses, a shower, a toilet, and hot water to clean his clothes. Plaintiff claims that Defendant Majors forced his hands behind his back to place steel handcuffs on them, and that he had "deep cuts and red marks on his wrists" from the handcuffs. Plaintiff further alleges that he spent five days in the "rubber cell" and that he repeatedly requested to speak to the C.O.O. Alan Blake, but that he was deprived of this right.

With respect to Defendant Blake, Plaintiff alleges that Blake failed to intervene to correct his staff from "physically abusing Plaintiffs [sic] person." Plaintiff contends that Blake is liable to Plaintiff for gross negligence for failure to protect Plaintiff's rights under 630.115 RSMo.[2]

MSOTC is a maximum security mental health facility in which many of the residents have a history of violence and intimidation that is not directly related to major psychiatric illness. The objective of MSOTC is to protect the public and to enable MSOTC residents to become productive members of the community and family without further victimizing others. MSOTC uses a cognitive-behavioral treatment model guided by a relapse-prevention approach in treating persons committed to MSOTC. Treatment is the function of MSOTC. The goal of this treatment regimen is the prevention of relapse of sexually deviant behavior. A

---

[2] Plaintiff's Amended Complaint also contains "claims" against Buhler Warncke and Hollinger. In that these defendants have been voluntarily dismissed, the Court will not discuss these "claims."

majority of the treatment is conducted in group settings. Detainees are expected to comply with MSOTC rules and regulations.

Plaintiff was placed in Protective Isolation for five days from October 1, 2004 to October 5, 2004. Protective Isolation is a room from which an individual is not able or permitted to exit, as a way of defusing or containing persistent, dangerous behavior that is uncontrollable by other means. Plaintiff was placed in Protective Isolation by Dr. Bellew-Smith to control his persistent dangerous behavior. Plaintiff was determined to be a physical threat to another resident as a result of Plaintiff's statement that he was going to kill the other resident's mother and sister by cutting their heads off and having sex with their dead bodies. Plaintiff was placed in handcuffs by Defendant Majors for safety reasons and escorted to isolation. He was handcuffed less than five minutes. Plaintiff's shoes and eyeglasses were removed for safety reasons. Although he was not allowed to use a shower during the isolation period due to safety concerns, Plaintiff was given hygiene products for a "bed bath." Plaintiff was escorted to the restroom when needed.

## **Summary Judgment Standard**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Employers Mut. Cas. Co. v. Wendland & Utz,* Ltd, 351 F.3d 890 (8th Cir. 2003); *Enter. Bank v. Magna Bank* 92 F.3d 743, 747 (8th Cir. 1996). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747. Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. This Court will turn its review to the facts in this case with the stated standards in mind.

## **Discussion**

An involuntarily committed patient such as plaintiff is not a prisoner, however, "his confinement is subject to the same safety and security concerns as that of a prisoner." *Revels v. Vicenz,* 382 F.3d 870, 875 (8th Cir.2004). "[B]ecause an involuntarily committed [patient] is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Id.* The rights of involuntarily committed patients arise under the Fourteenth Amendment. Therefore, Plaintiff's claims will be addressed according to the Fourteenth Amendment's procedural due process analysis.

The Supreme Court has set forth the applicable standard for analyzing due process claims.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, the determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."

*Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). Additionally, the Court has identified the maintenance of institutional security and the preservation of internal order and discipline as essential goals that may require limitation or retraction of retained

constitutional rights. *Wolfish,* 441 U.S. at 546-47. Furthermore, the Court has stated that detention facility administrators should be given "wide-ranging deference" in adopting and executing policies which they judge to be necessary to preserve institutional security. *Id.* at 547-48.

Plaintiff has not presented any evidence of an expressed intent to punish him. Defendants have, however, submitted evidence that the policies of the MSOTC were followed in transporting Plaintiff to Protective Isolation in a manner which would protect the other residents of MSOTC. Likewise, the restrictions placed on Plaintiff while in Protective Isolation are reasonably related to the purpose for which Dr. Bellow-Smith determined Protective Isolation to be necessary. Plaintiff's shoes and glasses were removed for Plaintiff's protection; he was handcuffed for less than five minutes for staff and resident safety; Plaintiff was not allowed to shower because of these safety issues. Plaintiff's complaint that he did not have a toilet in the room is without merit because he was allowed to use the restroom when he so requested. All of the actions taken by Defendant Majors were legitimate vis a vis the incident which gave rise to placement.

Additionally, as pointed out by Defendants, if Plaintiff is alleging a violation of his substantive due process rights, his action fails in light of the *de minimis* level of imposition place on plaintiff. See *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996). The duration of the handcuffs was less than five minutes. Plaintiff was

given hygiene products and allowed to use the restroom. The duration of the isolation was short. The totality of the circumstances clearly establish that Plaintiff's deprivation does not rise to the level of any substantive due process violation.

With respect to Defendant Blake, the Plaintiff states that he is bringing suit for a violation of Mo.Rev.Stat. § 630.115.[3] Section 630.115 does not provide for a private cause of action. Plaintiff has failed to demonstrate to the Court that through some means he is entitled to bring such an action against Defendant Blake.

## **Conclusion**

Defendants Majors and Blake are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has failed to controvert the evidence presented by Defendants that the actions taken by Defendant Majors were legitimate institutional actions based on reasonable concerns for the safety of Plaintiff, the other residents and the staff. As such, Plaintiffs claims against Defendant Majors fail. Furthermore, Plaintiff has identified no means through which he is entitled to bring an action against Defendant Blake under the provisions of Section 630.115 of the Missouri Revised Statutes.

---

[3] The Court notes that Plaintiff does seek recovery against Blake pursuant to Section 1983. This appears to the Court to be in recognition by Plaintiff that he cannot state a claim against Blake under 42 U.S.C. § 1983, in that his claims are based on the actions of Blake's staff. Such a claim would be based solely on the theory of *respondeat superior*, which is not actionable under Section 1983.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 49], is granted.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 27th day of November, 2006.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE